SEAN K. KENNEDY (Bar No. 145632)
Federal Public Defender
JOHN LITTRELL (Bar No. 221601)
Deputy Federal Public Defender
(E-Mail: John_Littrell@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
JORGE HUERTA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>JORGE HUERTA,<br><br>        Defendant. | Case No. CR 14-209-DMG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELEASE ON CONDITIONS [18 U.S.C. 3141(C)]** |

Defendant Jorge Huerta, through his counsel, Deputy Federal Public Defender John Littrell, hereby submits the attached Memorandum of Points and Authorities in support of his application for release on conditions pursuant to 18 U.S.C. § 3142(c).

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: April 22, 2014          By */s/ John Littrell*
JOHN LITTRELL
Deputy Federal Public Defender
Attorney for Jorge Huerta

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. STATEMENT OF FACTS

Jorge Huerta is a 22-year old young man who has lived in Los Angeles for nearly his entire life. He attended elementary school, middle school, and high school in the North Hollywood area. During his senior year, Mr. Huerta volunteered as a tutor for special needs children at Lankershim Elementary school. He graduated in 2009 from East Valley High School. Soon after his high school graduation, Mr. Huerta joined the work force and did a number of low-wage jobs. For the past two years, Mr. Huerta has worked for Linzer Co., a company that manufactures paintbrushes and rollers.

While still in high school, Mr. Huerta met Jenny Ruiz. In January of this year, the couple married in a ceremony in Ms. Ruiz's backyard. The wedding happened sooner than the couple had planned, and had to be held in Ms. Ruiz's home, because her grandmother was ill. Ms. Ruiz is a United States citizen by birth.

About two weeks ago, the couple had their first child, Damien Alexander Huerta. Damien was confined to the Neo-Natal Intensive Care Unit ("NICU") for the first week of his life, but has grown into health. He was present for Mr. Huerta's bail hearing, and will be present for any hearing this court holds on the issue of pretrial detention.

On Thursday, April 17, 2014, federal agents arrested Mr. Huerta at his workplace. They confronted him with an indictment alleging that he was a member of a conspiracy to distribute methamphetamine. The indictment alleges only one transaction committed by Mr. Huerta: a sale of 48.6 grams of methamphetamine to an informant. The transaction allegedly occurred on September 26, 2013. The indictment does not reveal the name of the undercover informant, or the circumstances of the alleged transaction.

Mr. Huerta has no criminal convictions. He was allegedly arrested once, but the charges in that case were dropped. Mr. Huerta he has never been deported or removed, but the government has represented that there is an "ICE" hold on him.

There are significant assurances that Mr. Huerta will not flee. Aside from his significant ties to the district, including all of his family members and his employer, Mr. Huerta is now tied to this district by his newborn son, Damien, who is only two

3

weeks old. Mr. Huerta is not only motivated by a desire to be with his son, but also by his desire to support his wife who cares for his son. There are no other indications of a risk of flight in Mr. Huerta's background. He has never failed to appear. He has no foreign travel. And he is willing to submit to conditions that would further restrict his movement, including travel restrictions, house arrest, and even electronic monitoring.

Neither the government nor the pretrial services officer argued that Mr. Huerta is a danger to the community, and there is no indication that he is.

Notwithstanding these facts, the magistrate ordered Mr. Huerta detained. The primary reason for the order was Mr. Huerta's undocumented immigration status, and the fact that an ICE detainer had been placed on him. The magistrate erred. Applying the proper legal standard, Mr. Huerta must be released on conditions.

## II. ARGUMENT

"Bail is basic to our system of law. Doubts whether it should be granted or denied should always be resolved in favor of the defendant." *Herzog v. United States*, 75 S. Ct. 349, 351, 99 L. Ed. 1299 (1955) (internal citations omitted). Bail allows the accused to prepare his defense, and prevents punishment before conviction. *Stack v. Boyle,* 342 U.S. 1, 4 (1951). Without bail "the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Id.*

In 1984, Congress enacted the Bail Reform Act, which "mandates release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). "Reasonably assure the appearance" does not require "ironclad guarantees" against flight, *United States v. Ward,* 63 F.Supp.2d 1203, 1211 (C.D. Cal. 1999). "Only in rare circumstances should release be denied." *Id.* at 1405 (citations omitted). To justify pretrial detention under the Bail Reform Act, the government must prove the defendant presents a "serious risk" of flight by a "clear preponderance of the evidence." *Id.* at 1406. Not only must there be

4

a serious risk, but there also must be actual risk; "mere opportunity" to flee is insufficient for detention. *United States v. Himler,* 797 F.2d 156, 162 (3d Cir. 1986).

Any doubts must be resolved in favor of release. *Motamedi,* 767 F.2d at 1405; *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that [the Bail Reform] Act clearly favors non detention."); *United States v. Sanchez-Martinez*, 2013 WL 3662871, *5 (D. Colo. Jul. 12, 2013) ("The Bail Reform Act favors pretrial release of defendants…and '[t]he court must resolve all doubts regarding the propriety of release in the defendant's favor.") (citations omitted); *United States v. Marinez-Patino*, 2011 WL 902466, *3 (N.D. Ill. March 14, 2011).

### a. The Presence of an ICE Detainer is Not a Relevant Consideration

At the initial bail hearing, both the pretrial services officer and the government argued that Mr. Huerta's immigration status should be weighed against him in determining whether he presented a risk of flight. Likewise, the magistrate judge relied on the existence of an ICE detainer, and the impact that would have on Mr. Huerta, as a factor that suggested a risk of flight. This was wrong. The Bail Reform Act lists the relevant factors in determining whether the defendant presents a flight risk:

> (g) Factors to be considered.--The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>
> > (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> >
> > (2) the weight of the evidence against the person;
> >
> > (3) the history and characteristics of the person, including--
> >
> > > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the

>> community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

18 U.S.C. § 3142(g).

ICE detainers are not among the enumerated considerations of § 3142(g). Congress could have included ICE detainers among the factors to be considered, but deliberately "chose not to exclude deportable from consideration for release…in criminal proceedings." *United States v. Adomako*, 150 F.Supp.2d 1302, 1304 (M.D. Fla. 2001); *United States v. Montoya-Vasquez,* 2009 WL 103596, *5 (D. Neb. Jan. 13, 2009) ("If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not"); *United States v. Barrera-Omana*, 638 F.Supp.2d 1108, 1110 (D. Minn. 2009) (finding an ICE detainer to be "an externality not under defendant's control" that "must be excluded from the detention analytic"). Courts should "disregard the laws governing release in INS deportation proceedings when [they] determine[] the propriety of release or detention of a deportable alien pending trial" under § 3142. *Adomako*, 150 F.Supp.2d at 1307.

Congress did anticipate that more than one law enforcement agency may want a defendant for custody in separate matters in § 3142(d), which addresses the pretrial release of an undocumented defendant. This is the sole mention of immigration status in the Bail Reform Act. This provision authorizes a temporary detention of no more than 10 days when the defendant is a deportable alien *and* a "judicial officer determines that…[he] may flee." 18 U.S.C. § 3142(d). Here, again, Congress requires a determination that the defendant is a flight risk. However, this applies *only* to detention

in order to "permit…deportation or exclusion." *Id.* If the government does not plan to initiate removal or exclusion proceedings, it cannot detain a person under § 3142(d).

Additionally, § 3142(d) states that if ICE "fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, *notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.*" *Id.* (emphasis added). In other words, Congress intended for the Bail Reform Act will trump any other laws, including laws governing immigration and deportation. *See United States v. Chavez-Rivas,* 536 F.Supp.2d 962, 964 (E.D. Wis. 2008) (holding that when ICE has been notified and has lodged a detainer instead of taking the defendant into custody, § 3142(d) requires the court to "treat defendant like any other offender under the Bail Reform Act"); *United States v. Adomako*, 150 F.Supp.2d 1302, 1304 (M.D. Fla. 2001) ("If the INS official does not take custody during a period of not more than ten days, Congress directs the Court to apply the normal release and detention rules to the deportable alien without regard to the laws governing release in INS deportation proceedings"); *United States v. Todd*, 2009 WL 174957 at *2 n.2 (M.D. Ala. Jan 23, 2009) (§ 3142(d) is "an admonition to courts not to use the immigration status of defendants against them or as the sole basis of a detention determination).

"[T]he existence of [an] ICE detainer is not in and of itself sufficient grounds to find that a defendant poses a risk of flight." *United States v. Morales*, 2012 WL 603520, *2 (D. Kan. Feb. 24, 2012); *see also United States v. Himler,* 797 F.2d 156, 161 (3d Cir. 1986) (rejecting the government's argument that defendant's outstanding warrant made him a flight risk and noting that "outstanding warrants, absent other evidence, do not require pretrial detention on the charges here."). Similarly, a defendant's alienage alone "does not point conclusively to a determination that [the defendant] poses a serious risk of flight." *Motamedi*, 767 F.2d at 1408.

To override the will of Congress -- which was to treat immigration status as a non-issue in the context of determining release under the Bail Reform Act -- would also present troubling due process, equal protection, and separation of powers issues. *See*

7

*Montoya-Vasquez,* at *5 ("[H]ad congress barred aliens against whom immigration detainers are filed from eligibility for release on conditions, such action would raise serious Constitutional issues, not the least of which would be claims of excessive bail, violation of equal protection of the laws, and violation of separation of powers."). *See also Zadvydas v. Davis,* 533 U.S. 678, 693-94 (2001); *Plyer v. Doe,* 457 U.S. 202, 210 (1982) ("Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."); *Matthews v. Diaz,* 425 U.S. 67, 77 (1976) (holding that aliens in the United States have both Fifth and Fourteenth Amendment rights).

### III. CONCLUSION

Mr. Huerta is an outstanding candidate for release on conditions pursuant to 18 U.S.C. § 3142(c). The fact that immigration authorities have placed an "ICE" hold on him does not change the risk calculus, and cannot as a matter of law justify detaining him despite the outstanding equities in his favor. For the foregoing reasons, Mr. Huerta should be released subject to conditions. Mr. Huerta respectfully requests a hearing to determine what those conditions should be.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: April 22, 2014      By */s/ John Littrell*
JOHN LITTRELL
Deputy Federal Public Defender
Attorney for Jorge Huerta