ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
ANGELA L. SCOTT (Cal. Bar No. 240418)
Assistant United States Attorney
OCDETF Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:    (213) 894-6683
    Facsimile:    (213) 894-8845
    E-mail:   angela.l.scott@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>JORGE BERISTAIN HUERTA,<br><br>             Defendant. | No. CR 14-209-DMG<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR PRETRIAL RELEASE<br><br>Hearing Date: April 28, 2014<br>Hearing Time: 11:30 a.m.<br>Location:     Courtroom of the<br>              Hon. Patrick J.<br>              Walsh |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Angela Scott, hereby files its Opposition to Defendant's Motion for Pretrial Release.

    This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

```
Dated: April 27, 2014            Respectfully submitted,

                                 ANDRÉ BIROTTE JR.
                                 United States Attorney

                                 ROBERT E. DUGDALE
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                        /s/
                                 ANGELA L. SCOTT
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA
```

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Jorge Beristain Huerta ("defendant") is moving for pretrial release based on additional sureties.  It is the government's understanding that the magistrate judge who originally detained defendant will hear this matter again because there has been a change in circumstance (the sureties).  Thus, the government requests that the Magistrate Court again deny defendant's bond because defendant is both a flight risk and a danger to the community regardless of the additional sureties.

**II.   STATEMENT OF FACTS**

**A.   Current Offense**

As set forth in the indictment and in the affidavit in support of the search warrants for defendant's residence (filed as "Document in Support of Government Request for Detention" on April 25, 2014 and hereinafter referred to as "SW Aff."), defendant participated in the coordination and distribution of 55.9 grams of 87% pure methamphetamine (48.6 grams of actual methamphetamine) to a Federal Bureau of Investigation (FBI) confidential source.  As set forth in the SW Affidavit, defendant made the following recorded statements during the September 26, 2013 drug deal:

During the conversation, the source asked "are you working with Mike (co-defendant Vilavazo) … or is this your work."  [SW Aff. at Bates No. 000235.]  Defendant responded, "this one … is from the same company."  Id.  Defendant later stated, "Mike [VILAVAZO] does not sell small ones… I'm the one in charge selling it like this."  Id.  Later, when the source inquired about whether defendant had a connection for "soda" (cocaine), defendant responded, "I don't have

it but … the one that works with me … we are all one hand … one finger of the hand." Id.  The source later stated, "…if the work is yours, you better tell me, no?  To work with you instead."  Defendant responded, "… no, no, no. Right now uh … not, it's not that I am … Mike and I are the same." Id.

Also during the meet, defendant stated that while he was in charge of selling small quantities, "I also do the big stuff, but to me is better to sell like this.  Because, uh, I have it there ready and I help people to make money also … Because … if I sell you everything at once, it may be that it gets lost … and this way you make more." Id.

Additionally, during the meet, defendant told the source that to reach him in the future, the source should send a text message stating, "Hey, can you call me?" Id. at 236.  Defendant also confirmed that he had disconnected his prior telephone (as discussed by the source and co-defendant Vilavazo during a prior recorded call). Id.  Defendant then said, "so we don't use the telephone that much." Id.  Later during the meet, defendant said, "…I change the phone almost every month." Id.  Defendant also told the source that when the source texts defendant to contact him, defendant would "call you from another cellular …" Id.

Prior to the meet, defendant made various recorded calls to the source on a phone registered in defendant's name and one registered to defendant's home address. Id. at 238-39.  Defendant attended the drug deal in a vehicle registered to his stepfather. Id.  Agents have seen defendant in the same vehicle on several other occasions.  Regarding defendant's relationship with co-defendant Vilavazo, toll records reveal calls between Vilavazo and defendant preceding the

drug deal.  Id. at 233.  Agents also saw a car registered to defendant and his stepfather parked at the address known to be co-defendant Vilavazo's residence.  Id. at 240.

### B. Immigration Status

Defendant is in the United States illegally.  According to the Pretrial Services Report (PSR) prepared for his first detention hearing, defendant's stepfather told Pretrial that defendant came to this country from Mexico when he was approximately 10 years old.  According to the case agent, Federal Bureau of Investigation Special Agent Michael Alker, ICE has placed a detainer on defendant.

### C. Post-Arrest Statements

Defendant was arrested on the instant allegations on April 17, 2014.  After his arrest, but before defendant was Mirandized, he told SA Alker that he should have run from law enforcement when he saw them "just to see what would happen."

### D. Detention hearing

Defendant made his initial appearance before the Honorable Patrick J. Walsh.  The government was unable to obtain a recording of this hearing in time for the filing of this brief.  According to the Assistant United States Attorney who represented the government at the hearing, the government proffered the indictment, the Pretrial Services Report, and Pretrial's recommendation of detention.  The government also argued that defendant was a flight risk and a danger to the community based on the presumption for federal drug offenses carrying a maximum sentence of ten years or more.  See 18 U.S.C. § 3142(e)(3).  The government also argued that defendant's immigration status and the ICE detainer contributed to defendant's risk of flight.

3

According to the AUSA present at the hearing, the Court detained defendant, finding that defendant had not rebutted the presumption that he was both a flight risk and a danger. While the Court considered the ICE detainer in its determination of flight risk, the Court stated that its decision was not based solely on the existence of the ICE detainer.

**III. ARGUMENT**

Under the Bail Reform Act, if the court "finds that no condition of combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer *shall* order the detention of the person before trial." 18 U.S.C. § 3142(e) (emphasis added). The Ninth Circuit has made clear that detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. Motamedi, 767 F.2d at 1406.

There is a rebuttable presumption that no conditions of release can assure the appearance or the safety of the community if the court finds probable cause to believe that the defendant committed a federal drug offense carrying a maximum sentence of ten years or more. Id.; 18 U.S.C. § 3142(e)(3). Here, in voting to indict defendant, a federal Grand Jury already determined that there was probable cause to believe that defendant conspired to distribute controlled substances, in violation of 21 U.S.C. §§ 846,

1  841(b)(1)(B).  This offense carries a maximum term of 40 years
2  imprisonment, and thus the presumption is triggered.  Once the
3  presumption is triggered, the defendant has the burden of producing
4  evidence to show that the presumption is unwarranted given the
5  particular facts of his case.  United States v. Hir, 517 F.3d 1081,
6  1086 (9th Cir. 2008); United States v. Ruben, 974 F.2d 580, 586 (5th
7  Cir. 1992); United States v. Dillion, 938 F.2d 1412, 1416 (1st Cir.
8  1991).

9      If the defendant proffers evidence to rebut the presumption,
10 there are several relevant factors in determining whether pretrial
11 detention is appropriate: (1) the nature and seriousness of the
12 offenses charged; (2) the weight of the evidence against defendant;
13 (3) the defendant's character, physical and mental condition, family
14 and community ties, past conduct, and criminal history; and (4) the
15 nature and seriousness of the danger posed by defendant to any person
16 or the community.  18 U.S.C. § 3142(g); Hir, 517 F.3d at 1086; United
17 States v. Winsor, 785 F.2d 755 (9th Cir. 1986); Motamedi, 767 F.2d at
18 1407.

19     The weight of the evidence is the least important of the factors
20 and the statute neither requires nor permits a pretrial determination
21 that the person is guilty.  Winsor, 785 F.2d at 757.  However, the
22 nature of the offense and the evidence of guilt is relevant to
23 indicate the likelihood that the person will fail to appear or will
24 pose a danger to the community.  Id.

25     Moreover, even where a defendant meets his burden of producing
26 rebuttal evidence, the presumption does not just disappear.  Hir, 517
27 F.3d at 1086.  "[R]ather the presumption remains in the case as an
28 evidentiary finding militating against release, to be weighed along

with other evidence relevant to factors listed in § 3142(g)."  Id. (quotations omitted).  Indeed, the Act's presumption should be added as a significant factor that supports pretrial detention under both rationales for detention.  See United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988) (presumption a factor militating against release); United States v. Cook, 880 F.2d 1158, 1160 (10th Cir. 1989)(same).

A defendant's immigration status, while not determinative, is relevant to whether that defendant is a flight risk, and it may be considered under section 3142(g)(3) of the Bail Reform Act (history and characteristics of the defendant).  See Motamedi, 767 F.2d at 1408; United States v. Chavez-Rivas, 536 F. Supp. 2d 968-969 (E.D Wis. 2008).  Likewise, an ICE detainer may be considered as a factor in assessing the risk that a particular defendant might flee.  See Chavez-Rivas, 536 F. Supp. 2d at 964, n.3 (citing United States v. Neves, 11 Fed. Appx. 6, 8 (1st Cir. 2001) (noting that the existence of a deportation order is relevant to the issue of flight); United States v. Adomako, 150 F.Supp.2d 1302, 1307 (M.D.Fla. 2001) ("An alien's INS history (to the extent that the government chooses to present it in support of its motion for detention) is, however, a factor that this Court weighs heavily in the risk of flight analysis under 18 U.S.C. § 3142(g)(3).").  A recent district court case called into question the government's ability to rely solely upon ICE detainers to establish that a defendant is a flight risk.  See United States v. Trujillo-Alvarez, 900 F.Supp.2d 1167, 1175 (D.Or. 2012). It does not appear, however, that the Ninth Circuit has addressed this issue.  At most, the Ninth Circuit has concluded that in a non-presumption case, the government did not meet its burden of

6

establishing flight risk because the government could not show that the removal period of 8 U.S.C. § 1231(a)(1)(A) would begin while defendant was "in custody" on pretrial release (and, thus, it was unclear whether ICE could even properly deport the defendant if he was released on bond). <u>United States v. Ezequiel Castro-Inzunza</u>, 2012 WL 6622075 (9th Cir. 2012). The Court did not address whether, if the removal period had expired, this would make defendant more of a flight risk.

### A. Defendant Has Not Rebutted The Presumption That He Is A Flight Risk.

#### 1. Post-Arrest Statements

Defendant's statements to SA Alker after his arrest provide further evidence that defendant is a flight risk. His statements indicate that, upon reflection, he should have attempted to avoid apprehension by law enforcement. He felt this so strongly that he admitted it aloud to the very law enforcement agents who arrested him. These statements were made before defendant was even advised of the charges against him or otherwise had an opportunity to fully assess the gravity of the situation. They were made despite the recent birth of his child and the other contacts to the Central District that the defense relies upon in its brief. The statements provide insight into the mentality and inclinations of the defendant, and weigh heavily against the release of defendant on bond.

#### 2. Immigration Status

Defendant is in the country illegally and ICE has placed a detainer on him. It is likely, then, that defendant will be deported at the conclusion of this case. Contrary to the defense's assertions, the government is not relying on defendant's immigration

7

status or the existence of the ICE detainer as factors that automatically trigger detention. Instead, the government is asking the Court to consider the effect these factors have on the defendant's motivation to flee. As discussed below, the evidence against defendant is significant. The government does not believe that defendant would be inclined to face the charges against him, serve prison time, and then be deported when he could simply self deport (or otherwise disappear) now.

### 3. Defendant is Facing a Significant Sentence

Defendant is facing a five-year mandatory minimum term of imprisonment in this case, and his Guidelines Range will likely be 70-87 months based on the quantity of methamphetamine that he provided to the law enforcement source. This is a strong incentive to abscond, especially given that defendant has never served a day in prison.

### 4. Defendant Has Not Rebutted the Presumption That He Is A Danger To The Community.

The weight of the evidence against defendant is strong and, therefore, weighs against releasing defendant on bond. Defendant had several recorded phone conversations and text messages arranging the drug deal at issue from a phone registered in his name and another phone registered to his home address. Defendant drove to the drug deal in a car registered to his stepfather; a car that law enforcement surveillance teams have seen him in many times since. Toll records show contact between defendant's phone and co-defendant Vilavazo's phone during the time they were both coordinating the drug deal with the source. Additionally, law enforcement has seen a vehicle registered to defendant and his stepfather parked at co-

8

defendant Vilavazo's house, which provides further evidence of their relationship.

In addition to the amount of the evidence against defendant, the evidence itself also shows him to be dangerous. In various recorded conversations with the source, defendant indicated that he worked for the same drug trafficking organization for which co-defendant Vilavazo worked ("this one … is from the same company;" "…I'm the one in charge selling it [narcotics] like this;" "…we are all one hand … one finger of the hand;" "Mike and I are the same.") Defendant's membership in a larger drug trafficking organization makes him a significant danger to the community.

Additionally, defendant's recordings reveal that, despite his limited criminal history, he is an experienced, sophisticated drug trafficker. For instance, he stated to the source that, while he was "in charge" of selling small quantities, "I also do the big stuff, but to me is better to sell like this. Because, uh, I have it there ready and I help people to make money also … Because … if I sell you everything at once, it may be that it gets lost … and this way you make more." It is evident from these recordings that defendant also deals in large quantities of narcotics. He indicated that he prefers to sell small quantities not because he does not have access to large amounts, but because there is less risk that a large load of drugs will "get lost" (e.g., get seized by law enforcement) and defendant, if fronting the drugs, would not get paid. Defendant provided further evidence that this was not his first drug trafficking experience when he told the source how to contact him for future deals; specifically, defendant told the source that he should send a text message stating, "Hey, can you call me?" at which point he would

return the source's call on another cell phone.  Defendant also told the source, "so we don't use the telephone that much" and "…I change the phone almost every month."

The evidence indicating that defendant is part of a larger drug trafficking organization, can deal in even larger quantities of narcotics than he distributed to the source, and conducts extensive attempts to thwart law enforcement detection by using multiple phones and dropping his phone monthly indicates that he is a sophisticated drug trafficker and, therefore, a danger to the community.  Moreover, the way in which he uses and drops multiple phones also demonstrates the lengths to which he will go to avoid apprehension by law enforcement, which is further evidence that he is a risk of flight.

**IV.  CONCLUSION**

Based on the above, the government believes that defendant has failed to rebut the presumption that he is a flight risk and a danger to the community.  The government respectfully requests that defendant's motion for bail be denied.