STEPHANIE YONEKURA
Acting United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
J. MARK CHILDS (Cal. Bar No. 162684)
Assistant United States Attorney
OCDETF Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2433
     Facsimile: (213) 894-0142
     E-mail:    mark.childs@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 14-209-DMG |
|---|---|
| Plaintiff, | GOVERNMENT'S NOTICE OF MOTION AND MOTION IN LIMINE RE: EXCLUSION OF ANY REFERENCE TO A JOKE MADE BY A TRANSLATOR; MEMORANDUM OF POINTS AND AUTHORITIES |
| v. | |
| ISMAEL GUTIERREZ VILAVAZO, aka "Ismael Gutierrez," aka "Mike Gutierrez," aka "Mikey," and JORGE BERISTAIN HUERTA, aka "Moreno," | Hearing Date: August 27, 2014<br>Hearing Time: 1:30 p.m.<br>Location:    Courtroom of the<br>             Hon. Dolly M. Gee |
| Defendants. | |

TO: DEFENDANT ISMAEL GUTIERREZ VILAVAZO, THROUGH HIS DEFENSE COUNSEL, ANGEL NAVARRO, AND DEFENDANT JORGE BERISTAIN HUERTA, THROUGH HIS DEFENSE COUNSEL, DEPUTY FEDERAL PUBLIC DEFENDER JOHN LITTRELL:

PLEASE TAKE NOTICE that on August 27, 2014 at 1:30 p.m., in the courtroom of the Honorable Dolly M. Gee, United States District Judge, the government will bring on for hearing the following motion in limine:

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby moves in limine to exclude any reference or use of a joke made in an e-mail drafted by a FBI Spanish language translator, Dinorah C. Rodriguez, to the case agent, who did not respond to the joke, pursuant to Federal Rules of Evidence 403. The government does not intend to call Dinorah Rodriguez.

This motion in limine is based on the attached Memorandum of Points and Authorities, all files and records of this case, and any additional argument and evidence presented at any hearing on this motion.

Dated: August 12, 2014          Respectfully submitted,

                                STEPHANIE YONEKURA
                                Assistant United States Attorney

                                ROBERT E. DUGDALE
                                Assistant United States Attorney
                                Chief, Criminal Division


                                       /s/
                                _____
                                J. MARK CHILDS
                                Assistant United States Attorney

                                Attorneys for Plaintiff
                                UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION AND SUMMARY OF FACTS**

      1.   <u>Defendant Huerta Spoke in the Spanish Language During the September 26, 2013 Drug Deal</u>

During the evening of September 26, 2013, defendant Jorge Beristain Huerta ("Huerta") drove a white Chrysler 300M vehicle, registered to 6346 Agnes Avenue, North Hollywood, California, to a McDonald's parking lot in North Hollywood, and provided a cooperating witness ("CS") with 48.6 grams of actual methamphetamine.  Around this time, an agent, who was conducting surveillance of the McDonald's parking lot, saw the license plate of the white Chrysler vehicle.  According to DMV records, the white Chrysler vehicle was registered to defendant Huerta's address, namely, 6346 Agnes Avenue, North Hollywood, California.[1]  Text messages, telephone calls and the in-person meeting at the McDonalds between defendant and CS were captured by audio or video recordings.  During the recorded conversations that occurred on September 26, 2013, CS and defendant Huerta spoke in the Spanish language and defendant Huerta referred to himself as "Moreno".[2]  <u>See</u> Exh. 1, pgs. 3 and 7, transcript of calls and meeting before and during 9/26/13 drug deal.

---

[1] In addition, on September 26, 2013, during a recorded call with CW, defendant admits that defendant is "in the Chrysler, the white one." Additionally, during this investigation, agents observed defendant driving the white Chrysler 300M vehicle and observed it parked at or near 6346 Agnes Avenue, North Hollywood, California.

[2] During September 25 and 26, 2013, before, during and/or after the drug deal in the McDonald's parking lot, defendant used two telephone numbers (818-720-7725 and 818-471-2618) to communicate with CW and/or the drug broker who set up the deal, namely, co-defendant Ismael Gutierrez Vilavazo.  Phone records show that telephone number 818-720-7725 was billed by the phone company to Jenny Ruiz,
*(footnote cont'd on next page)*

2. <u>An FBI Translator Made a Joke in an Email</u>

Dinorah Rodriguez, a translator who works at the FBI, was assigned to listen to the audio recordings that occurred on September 26, 2013, and translate them from Spanish to English.  Ms. Rodriguez created draft transcripts of the two recorded calls and one recorded meeting between defendant Huerta and CW that occurred on September 26, 2013.  <u>See</u> Exh. 1, hereto.  As the drug courier (defendant Huerta) referred to himself as "Moreno" during the drug deal, the statements of the courier in the transcripts are designated as "Moreno".

On April 17, 2014, defendant was arrested at his place work and made statements, primarily, to FBI Special Agent ("SA") Laura Cuthbert that were recorded by FBI SA Michael Alker.

On April 30, 2014, at 3:36 p.m., in an e-mail, SA Alker requested the Tom Kim, FBI Foreign Language Program coordinator, to have the translator who prepared the translation and transcription of the audio recordings that occurred on September 26, 2013 (namely, Dinorah Rodriguez) compare Moreno's voice on the September 26, 2013 recording with the audio recording taken during defendant Huerta's arrest on April 17, 2014.  <u>See</u> Exh. 2, pg. 2, e-mail sent 4/30/14 at 3:36 p.m.  In the e-mail, SA Alker pointed out that the recorded statements made during the April 17, 2014 "is mainly in English."

---

defendant's wife, at 6346 Agnes Avenue, North Hollywood, California, and that telephone number 818-471-2618 was subscribed to defendant's name.  Additionally, according to phone records, on and about September 25 and 26, 2013, defendant's two phones (818-720-7725 and 818-471-2618) were in frequent contact with the telephones of defendant's wife (818-XXX-7666) and mother (818-XXX-5360).

4

On April 30, 2014, at 3:46 p.m., Tom Kim forwarded SA Alker's e-mail to Dinorah Rodriguez because she prepared the translation and transcription of the audio recordings that occurred on September 26, 2013.  See Exh. 2, pg. 1, e-mail sent 4/30/14 at 3:46 p.m.

On May 1, 2014, Ms. Rodriguez the following e-mail to SA Alker and Tom Kim,

> Tom, Mike,
> I have been listening to Moreno's voice in my transcript and the man that SA Laura Cuthbert interviewed.  I don't think Huerta is in fact Moreno. In spite of his multiple denials of being Moreno. But keep in mind the guy in the transcript selling drugs was relaxed and in control and Huerta is under arrest and speaking English only.  I suggest a good beating will make him confess!! ;0

See Exh. 2, pg. 1., e-mail sent 5/1/14 at 9:01 a.m.

The government does not intend to call Dinorah Rodriguez.

**II. ARGUMENT**

    **A.   The Probative Value of the Translator's Joke Is Substantially Outweighed by The Danger of Unfair Prejudice**

The statement in the e-mail, "I suggest a good beating will make him confess!!" was clearly a joke and should be excluded from this trial.  In fact, the offending statement was followed by a symbol for a wink (";0"), indicating the statement was made in jest.  It was a bad joke and should not be admitted in any form during this trial. There is no allegation or evidence that any physical violence was conducted by the FBI during this investigation.  However, the joke conjures up that image.  The admission of this evidence will create a side-show for the jury.

The joke is evidence that "has an undue tendency to suggest [a] decision [by the jury] on an improper basis, [such as]. . . an emotional one", which is considered "unfairly" prejudicial.  United

5

States v. Skillman, 922 F.2d 1370, 1374 (9th Cir. 1990)(quoting Advisory Committee Notes to Rule 403).  Here, the reference to beating a defendant invokes an emotional, if not an angry, response. The statement creates a shock to the listener.

This Court is authorized to preclude or limit the defense from impeaching its own witnesses. See, e.g., United States v. Libby, 475 F. Supp. 2d 73, 80-84 (D.D.C. 2007) (barring the defense from impeaching its witness with hearsay statements); see also United States v. Lattin, 108 F.3d 1374 (4th Cir. 1997) (unpublished disposition) (affirming district court order prohibiting defense from calling a witness on the ground that, "[w]hile a party may impeach its own witness, the district court did not abuse its discretion here because the Government did not call [the witness] to testify");[1] cf. United States v. Buffalo, 358 F.3d 519, 522-27 (8th Cir. 2004) (holding that Federal Rule of Evidence 403 governs whether defense may call a witness for the primary purpose of impeachment); Beasley v. United States, 218 F.2d 366, 408 (D.C. Cir. 1955) ("The defense may not call a witness who has not testified merely to attempt to discredit him in the course of eliciting adverse testimony . . . .").

Even as there is some reasonable basis for concluding that defendant's primary purpose in calling Ms. Rodriguez is not merely to impeach her, any impeachment of Ms. Rodriguez is impermissible under Federal Rule of Evidence 403. Under that rule,

> Although relevant, evidence may be excluded if its
> probative value is substantially outweighed by the
> danger of unfair prejudice, confusion of the issues, or

6

    misleading the jury, or by considerations of undue
    delay, waste of time, or needless presentation of
    cumulative evidence.

    By calling Ms. Rodriguez to the stand and then impeaching her with the inflammatory statement in the e-mail, defendant would create a mini-trial on Ms. Rodriguez's credibility, even though the government will not have relied on her testimony to establish defendant's guilt. Calling Ms. Rodriguez and eliciting the inflammatory statement therefore would create a risk of confusion to the jurors and an even greater waste of time, and it would result in unfair prejudice by inviting the jury to question the testimony of other government witnesses with evidence that is irrelevant to their credibility.

    Finally, defendant may not use extrinsic evidence to impeach her credibility. See WEINSTEIN'S FEDERAL EVIDENCE § 607.02[1] (noting that "[i]mpeachment of one's own witness . . . must yield to the principle that extrinsic evidence may not be used to impeach a witness on collateral matters").

**III. CONCLUSION**

    For the foregoing reasons, the government respectfully requests that this Court preclude the defense from referencing the statement in the e-mail, "I suggest a good beating will make him confess!!" during this trial for the reasons set forth above.